# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DANIEL C. BARNES, JR.,  
    Plaintiff,

vs.

DON MORGAN, et al.,  
    Defendants.

Case No. 1:11-cv-380

Weber, J.  
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff, an inmate at Southern Ohio Correctional Facility (SOCF), brings this action pro

se and *in forma pauperis* under 42 U.S.C. § 1983 against SOCF Warden Don Morgan, SOCF

Assistant R.N. Chief Inspector Mona Parks, and SOCF Health Care Administrator Roseanne

Clagg.[1] This matter is before the Court on defendants Don Morgan, Mona Parks, and Roseanne

Clagg's motion to dismiss plaintiff's complaint (Doc. 27), plaintiff's memorandum in opposition

(Doc. 37), and defendants' reply. (Doc. 38). This matter is also before the Court on plaintiff's

motions to amend (Docs. 18, 25, 31), plaintiff's motions for injunctive relief (Docs. 9, 17),

plaintiff's motions for discovery (Docs. 15, 32), plaintiff's motion to appoint counsel (Doc. 16),

plaintiff's motion for default (Doc. 29), and defendant's motion to stay discovery. (Doc. 27).

## I. Plaintiff's Complaint.

Plaintiff's complaint alleges that he is not receiving adequate medical care for his prior

back injuries. Plaintiff alleges that the SOCF doctors refuse to administer tests or "properly"

treat his May 2010 spine injury despite an x-ray that was not within normal limits. The

complaint further alleges that plaintiff experiences severe pain and has filed multiple grievances

to address the alleged inadequate medical care.

---

[1] The Court notes that plaintiff's Civil Cover Sheet identifies that he is bringing a "Personal Injury –
Medical Malpractice" claim. *See* Doc. 1. However, as plaintiff's allegations involve claims of denial of proper
medical care and retaliation based on filed grievances, the Court construes plaintiff's complaint as alleging
violations of his First and Eighth Amendment rights, claims properly brought under 42 U.S.C. § 1983.

Further, plaintiff alleges that he is being retaliated against in violation of his First

Amendment rights due to filing these grievances as SOCF correctional officers have removed his

grievance and legal paperwork. Plaintiff also alleges that documents are missing from his

medical file and that the file contains falsified documents. The complaint further alleges that

plaintiff is not receiving proper medication and is purposefully being made to experience severe

pain in retaliation for filing grievances. Plaintiff seeks relief in the form of: (1) proper medical

tests; (2) proper medical care and adequate treatment; (3) a monetary reward of $10,000.00 per

named defendant; and (4) equitable relief in the form of a Court ordered investigation of health

care practices at SOCF. (Doc. 12, pp. 4- 5, Statement of Claim).

## II. Defendants' Motion to Dismiss Should Be Granted.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal for failure to state a claim

for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing

*Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true,

but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550

U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not

contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a

2

cause of action will not do." *Twombly,* 550 U.S. at 555. Nor does a complaint suffice if it

tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. As the

Supreme Court in *Iqbal* explained:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a
> court must accept as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions. Threadbare recitals of the elements of the cause
> of action, supported by mere conclusory statements, do not suffice. . . . Rule 8
> marks a notable and generous departure from the hyper-technical, code-pleading
> regime of a prior error, but it does not unlock the doors of discovery for plaintiff
> armed with nothing more than conclusions. Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss. . . . Determining whether a
> complaint states a plausible claim for relief will, as the Court of Appeals
> observed, be a context-specific task that requires the reviewing court to draw on
> its judicial experience and common sense. . . . But where the well-pleaded facts
> do not permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to
> relief."

*Id.* at 1949-50 (internal citations omitted). With these principles in mind, the Court reviews

plaintiff's complaint.

As an initial matter, the Court notes that plaintiff's complaint does not specify whether he

is bringing his claims against defendants in their individual or official capacities.[2] Accordingly,

the Court will analyze the complaint under both theories of liability.

A.    Liability of Defendants in Their Official Capacities

It is well settled that "a suit in federal court by private parties seeking to impose a

liability which must be paid from public funds in the state treasury is barred by the Eleventh

Amendment." *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936, 940 (6th Cir.

1990) (quoting *Quern v. Jordan,* 440 U.S. 332, 337 (1979)), *overruled on other grounds by*

*Hafer v. Melo,* 502 U.S. 21, 27 (1991); *see also Edelman v. Jordan,* 415 U.S. 651, 663 (1974).

The Eleventh Amendment serves to prohibit a federal court from hearing a damages claim

3

against a state and its entities except where Congress has explicitly abrogated a state's immunity

to suit on the face of a statute or where the state itself has consented to suit. *Cowan,* 900 F.2d at

940; *see also Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 (1985). Congress did not

abrogate state immunity to suit under 42 U.S.C. § 1983, *see Will v. Michigan Dept. of State

Police*, 491 U.S. 58, 66-67 (1989); *Quern,* 440 U.S. at 340-41, and the State of Ohio has neither

constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.

*See Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline

Marie Nursing Homes,* 694 F.2d 449 (6th Cir. 1982). A suit against defendants in their official

capacity would, in reality, be a way of pleading the action against the entity of which defendants

are agents, *i.e.,* the State of Ohio. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S.

658, 690 (1978). Thus, actions against state officials in their official capacity are included in this

bar. *Will*, 491 U.S. at 70-71; *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Therefore, defendants in

their official capacities are immune from a suit for damages under the Eleventh Amendment.

*See Thiokol Corp. v. Dept. of Treasury, State of Mich.,* 987 F.2d 376, 381 (6th Cir. 1993) (noting

that the Eleventh Amendment "also bars suits for monetary relief against state officials sued in

their official capacity"). Accordingly, plaintiff's damages claim against defendants Morgan,

Parks, and Clagg in their official capacity should be dismissed

In addition to damages, plaintiff requests injunctive relief. The Eleventh Amendment

does not bar prospective injunctive or declaratory relief against state officials, even though such

relief may have an ancillary effect on the state treasury. *Quern*, 440 U.S. at 337; *Edelman*, 415

U.S. at 667-668; *Doe v. Wigginton,* 21 F.3d 733, 736 (6th Cir. 1994); *Alia v. Michigan Supreme

Court*, 906 F.2d 1100, 1105-1106 (6th Cir. 1990). Nevertheless, as plaintiff has failed to state a

---

[2] Plaintiff's proposed amended complaint indicates that he intended to bring the claims against defendants
in both their individual and official capacities. (Doc. 31).

4

claim upon which relief can be granted on the merits of his Eighth Amendment claim, he would not be entitled to injunctive relief on this claim against defendants in their official capacity.

      B.     Liability of Defendants in Their Individual Capacities

A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. To state a claim for relief under 42 U.S.C. § 1983 for a denial of proper medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff must allege that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 106. Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860-61 n.5. Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860-61 n.5. A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement, including proper medical care, only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Plaintiff must do more than make broad and conclusory allegations that defendants were "deliberately indifferent." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). He must allege that each named defendant was personally involved in the deprivation of his civil rights. *Rizzo v.*

*Good*, 423 U.S. 362, 371 (1976). Here, plaintiff has named three supervisory officials as

defendants: the SOCF Warden, the R.N. chief inspector, and the health care administrator.

*Respondeat superior* does not apply to section 1983 claims, and may not serve as a basis for

holding the supervisory officials liable in this case. *Monell*, 436 U.S. at 658; *Hill v. Marshall*,

962 F.2d 1209, 1213 (6th Cir. 1992). To state a claim that these supervisory officials are

personally liable, plaintiff is required to allege that they were personally involved in the alleged

misconduct. *See Hill*, 962 F.2d at 1213; *Birill v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989).

Generally, a warden or supervisor may rely on the professional judgment of his medical

staff. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Schaub v. VonWald*, 638 F.3d 905,

935-36 (8th Cir. 2011); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Graham ex rel. Estate*

*of Graham v. Cty. Of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004); *Moore v. Tanner*, No. 07-

cv-10442, 2008 WL 3876346, at *13 (E.D. Mich. Aug. 18, 2008). However, where a supervisor

authorizes, approves or knowingly acquiesces in the unconstitutional conduct of his

subordinates, liability may be imposed against the supervisor. *Turner v. City of Taylor*, 412 F.3d

629, 643 (6th Cir. 2005) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Nor may a supervisory official "escape liability if the evidence showed that he merely refused to

verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of

risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8.

Here, plaintiff's complaint contains no allegations whatsoever that defendants Morgan,

Parks, or Clagg had any knowledge of his medical condition or were involved in any decisions

relating to his medical treatment. Thus, plaintiff's complaint seeks to impose liability on

defendants solely by virtue of their supervisory responsibilities at SOCF. As stated above,

*respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability on

defendants. *See Monell,* 436 U.S. 658; *Hill,* 962 F.2d at 1213. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 129 S.Ct. at 1948. In the absence of any such allegations against defendants Morgan, Parks, or Clagg, defendants' motion to dismiss plaintiff's complaint should be granted.

Even if the complaint did not suffer this fatal flaw, plaintiff has failed to state a cognizable claim for deliberate indifference under the Eighth Amendment. To defeat defendants' motion to dismiss, plaintiff must have alleged facts meeting the objective and subjective requirements of an Eighth Amendment claim. *Flanory v. Bonn,* 604 F.3d 249, 253 (6th Cir. 2010) (citing *Harrison v. Ash,* 539 F.3d 510, 517-18 (6th Cir. 2008); *Farmer,* 511 U.S. at 833)). "To satisfy the objective component, the injury must be sufficiently serious." *Id.* at 254 (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 302-03 (1991)). "The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety." *Id.*

Plaintiff's complaint does not include sufficient allegations from which this Court can infer that the named supervisory defendants are individually liable for the alleged constitutional violations. Plaintiff alleges that he suffers from two prior back injuries that cause him severe pain. Plaintiff further alleges that the doctors at SOCF are not testing him and, consequently, he is not receiving adequate medical care. The complaint also includes a vague allegation that an x-ray was taken and was not within normal limits. Also included are general allegations that plaintiff is not receiving proper prescription medications and is being purposefully kept in pain in retaliation for filing grievances.

Plaintiff's complaint fails to meet the subjective requirements of an Eighth Amendment deliberate indifference claim.[3] "The state of mind requires that the official 'consciously disregard' a substantial risk of serious harm. Thus a showing of deliberate indifference requires a showing of the official's actual awareness of a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The instant complaint contains no allegations whatsoever that the defendants had knowledge of, much less consciously disregarded, plaintiff's medical condition. Moreover, plaintiff's complaint indicates that he received and continues to receive treatment from SOCF doctors, including an x-ray and prescription medication. Accordingly, plaintiff does not allege that he has received no care but, rather, that the care he received is inadequate. Such claims do not rise to the level of an Eighth Amendment violation:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970; see also *Horn*, 22 F.3d at 660 ('Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain.'). Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' *Farmer*, 511 U.S. at 836[.]

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Plaintiff does not allege that his condition requires specific treatment that is being denied nor does the complaint contain allegations that he has been diagnosed with any medical condition. Rather, plaintiff simply alleges that he is "positive [he's] not receiving 'ADEQUATE HEALTHCARE.'" (Doc. 12, p.

---

[3] Assuming that plaintiff's pain is as severe has he alleges, such allegations are minimally sufficient to meet the objective requirement of alleging a "serious medical need." *See Vickery v. Caruso*, No. 07-13419, 2008 WL 4058721, at *7-8 (E.D. Mich. Apr. 25, 2008) (Report and Recommendation), *adopted as modified on other grounds*, 2008 WL 4058717 (E.D. Mich. Jul. 14, 2008) (finding that plaintiff's allegations of untreated pain from injuries sufficiently alleged a "serious medical need") (citing *Westlake*, 537 F.2d at 859 ("a prisoner who is needlessly allowed to suffer pain when relief is available does have a cause of action against those whose deliberate indifference is the cause of his suffering.")).

5).  Plaintiff's allegations about the type of treatment he receives amount to little more than a difference of opinion between plaintiff and the physicians who treat him as to the appropriateness of his medical care.  As noted by the Supreme Court, such a difference of opinion does not amount to a constitutional violation.  *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5.  As plaintiff has failed to allege any facts from which this Court can reasonably infer that defendants had knowledge of or acted indifferently to his medical needs, the complaint should be dismissed.

With respect to plaintiff's claims of retaliation in violation of his First Amendment rights, the undersigned further recommends dismissal of the complaint against defendants Morgan, Parks, and Clagg.  "In order to state a retaliation claim, a plaintiff must allege that: 1) he engaged in constitutionally protected conduct; 2) the defendants subjected him to an adverse action which caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part as a response to the exercise of his constitutional rights."  *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  While plaintiff's complaint meets the first criteria for alleging a retaliation claim, he has failed to allege any facts demonstrating the required causal connection between the grievance and the alleged adverse action, *i.e.*, inadequate medical treatment.[4]  Significantly, the complaint fails to identify that the named defendants had any involvement whatsoever with plaintiff's medical treatment.  Plaintiff's allegations that "[he] know[s]/feel[s] that [he is] being retaliated against" by SOCF staff (Doc. 12, p. 5) are too vague, conclusory and insufficient to state a First Amendment retaliation claim.  *Twombly*, 550 U.S. at 557.  *See also Skinner v. Bolden*, 89 F. App'x 579, 579-

---

[4] Plaintiff's utilization of SOCF's grievance procedure is constitutionally protected conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (discussing prisoner's First Amendment rights to file grievances

80 (6th Cir. 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Accordingly, plaintiff's complaint should be dismissed in its entirety and defendants' motion to dismiss (Doc. 27) should be **GRANTED**.

### III. Plaintiff's Motions

Plaintiff has several pending motions. In light of the above recommendation to dismiss plaintiff's complaint, these motions are ostensibly moot. However, the undersigned will address these motions in the event the District Judge declines to adopt the above recommendation.

    A.    <u>Plaintiff's Motions to Amend (Docs. 18, 25, 31)</u>

Plaintiff has filed three separate motions to amend his complaint. Plaintiff's first and second motions to amend seek simply to include the names of additional defendants, specifically Correctional Officer David Penrod, Correctional Officer Frazer, and Deputy Warden Anthony Codagan. (Docs. 18, 25). Neither motion seeks to add any additional factual content. Defendants' motion to dismiss encompassed these proposed amendments. *See* Doc. 27. Accordingly, plaintiffs' motions to amend to include additional defendants (Docs. 18, 25) should be denied for the reasons discussed above in relation to defendants' motion to dismiss plaintiff's original complaint.

Plaintiff's third motion to amend includes a copy of the proposed amended complaint which contains a significant number of additional facts. (Doc. 31). The proposed third amended complaint includes allegations that in September 2010, plaintiff was improperly taken off of medication (Gabapentin) used to treat his nerve damage; plaintiff alleges that his Gabapentin prescription abruptly stopped but that he should have been weaned off of it by lowering the dosage gradually. (Doc. 13, ¶ 13-14). Plaintiff further alleges that from October 2010 to February 2011 he was re-prescribed Gabapentin in a liquid solution which was prepared

---

against prison officials and the limitations of this right).

in violation of Ohio Department of Rehabilitation and Correction (ODRC) policy.[5] *Id.* at ¶¶13-18. Plaintiff alleges that he filed several grievances about this method of medication because the solution occasionally caused him to experience stomachaches. *Id.* at ¶¶ 19-20. The proposed amended complaint further states that existing defendants Clagg, Morgan, and Parks, and proposed defendant Cadogan were aware of this policy violation and were condoning the practice by denying plaintiff's grievances. Plaintiff alleges he stopped receiving the liquid solution in February 2011. *Id.* at ¶¶ 20-21.

With regard to his back injury, plaintiff's proposed amended complaint includes allegations that he was referred to a neurosurgeon who subsequently referred plaintiff to a pain clinic where he received trigger point injections in January 2011. *Id.* at ¶¶ 24-28. Plaintiff alleges that his Gabapentin dose was again improperly reduced. *Id.* at ¶ 30. Plaintiff alleges that his medication was reduced, he did not receive proper tests, and he did not receive a second round of trigger point injections due to grievances he filed. Further, plaintiff alleges defendants Morgan and Clagg, and proposed defendant Cadogan were derelict in their duties by failing to acknowledge the retaliation by medical providers at SOCF against plaintiff. *Id.* at ¶ 32. With respect to proposed defendants Correctional Officers Penrod and Frazer, plaintiff alleges these officers illegally searched his cell, improperly required him to scrub the showers, a job he was not classified to do, and placed him in isolation in retaliation for naming them as proposed defendants in this lawsuit. *Id.* at ¶¶ 33-35. Further, plaintiff alleges that Officers Penrod and

---

[5] Plaintiff alleges that ODRC policy requires that when an inmate receives crushed medication in a liquid solution, the solution must be prepared in the presence of the inmate. (Doc. 13, ¶16). Plaintiff provides no authority supporting this allegation nor has this Court been able to identify any such internal policy. Regardless, whether or not employees at SOCF violated an internal ODRC policy is irrelevant to plaintiff's constitutional claims. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) (violation of municipal policy does not create liability under § 1983); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687 (6th Cir. Apr. 21, 1995) ("failure to comply with a prison policy . . . does not rise to the level of a constitutional violation because the policy directive simply does not create a protectable liberty interest.").

Frazer have repeatedly refused to contact medical staff when he complains of chest pains. *Id*. at

¶ 37.

Motions to amend a complaint are governed by Rule 15 of the Federal Rules of Civil

Procedure which provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave. The court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). It is within the court's discretion to deny a motion to amend

a complaint in consideration of, among other things, whether the amendment would be futile.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The test for futility is whether the amended

complaint "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford*

*Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Here, plaintiff's proposed amended complaint, despite the inclusion of significantly more

facts than were alleged in the original complaint, would not survive a Rule 12(b)(6) motion to

dismiss; accordingly, his motions to amend should be denied. Plaintiff's proposed amended

complaint suffers from the same causal deficiencies as his original complaint. Though plaintiff's

proposed amendments include allegations directed at defendants Clagg, Morgan, Parks, and

proposed defendant Cadogan, the allegations are conclusory and speculative and insufficient to

state a claim for First or Eighth Amendment violations. The proposed allegations against these

individuals are as follows:

> Defendant(s) Ms. R. Clagg – Health Care Administrator, Don Morgan – Warden
> and Anthony Cadogan – Deputy Warden of Special Services . . . as well as Mona
> Parks – Assistant R.N. Chief Inspector at [ODRC] have received notice of all
> previously listed policy/procedure/or regulation violation(s) and denied the
> accusation(s) thereby condoning the practice(s) of policy violation. . . . Upon
> information and belief plaintiff believes that the refusal of [Clagg, Morgan, and
> Cadogan] after being notified of the poor treatment practices of medical
> doctors/Nurse Practioner/nurses as well as continued withholding and reduction
> of medical treatment that was inadequate to say the least were derelict in their
> duties as to directing treatments and refused to acknowledge the clear acts of

> retaliation of plaintiff's use of the grievances procedure by doctors/Nurse Practioners/nurses by refusing to adequately test/treat plaintiff as well as cancelling treatment options for no apparent reason.

(Doc. 31, ¶¶ 20, 32).  Plaintiff also alleges that Officers Frazer and Penrod have repeatedly ignored his requests to contact medical for his complaints of chest pain (*Id.* at ¶ 37), that the doctors "refuse to order any tests other than x-rays" (*Id.* at ¶ 38), that his "treatment/meds do not help/cure/or control" his pain and numbness (*Id.*), and that no doctor or defendant can "honestly diagnose plaintiff at this point in time." (*Id.*).

These allegations do not assert that any of the defendants (or proposed defendants) were deliberately indifferent to plaintiff's serious medical needs.  Essentially, plaintiff is alleging that defendants Clagg, Morgan, Parks, and proposed defendant Cadogan were negligent in their supervisory duties over SOCF medical personnel.  However, as stated above, supervisory officials cannot be held liable on a *respondeat superior* theory in a § 1983 claim.  *See Monell,* 436 U.S. 658; *Hill*, 962 F.2d at 1213. Furthermore, the denial of plaintiff's grievances, without more, is insufficient to support a claim under § 1983.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  *See also Bellamy*, 729 F.2d at 421.  Plaintiff complains that Officers Penrod and Frazer have  not contacted the medical department when he notifies them of chest pain, yet plaintiff has failed to allege he suffered any adverse consequence, actual injury, medical set back or any harm resulting from their alleged inaction.  In fact, in the very next paragraph of plaintiff's proposed amended complaint, plaintiff's allegations demonstrate that he was receiving ongoing care from SOCF staff, but disagreed with the efficacy of that treatment.  Plaintiff alleges he received prescription medication to treat his chronic pain, had a consultation with a neurologist, and received trigger point injections at a pain

13

clinic. He also alleges that the only tests the doctors will order are x-rays and that his current treatment and medications do not help or cure his conditions. (Doc. 31, ¶¶ 13-19, 24, 26-28, 31, 38). These allegations, taken together, fail to state a claim for deliberate indifference as they demonstrate that plaintiff received ongoing care to address his complaints and/or pain but that he simply disagreed with the type of care he was receiving. Plaintiff's difference of opinion with his doctors does not amount to a claim of deliberate indifference. *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5. The proposed amended complaint fails to demonstrate that the named and/or proposed defendants, or the medical staff at SOCF, denied plaintiff's requests for care or administered woefully inadequate treatment. *See Byrd*, 701 F.2d at 594; *Westlake*, 537 F.2d at 860, 861 n.5; *see also Estelle*, 429 U.S. at 106. At most, these allegations assert that unnamed SOCF personnel were negligent in their testing and treatment of plaintiff. As previously stated, such allegations are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860-61 n.5. Accordingly, plaintiff's motions to amend should be denied as futile as the proposed amendments fail to state a claim for deliberate indifference and would not survive a Rule 12(b)(6) motion to dismiss.

Turning to plaintiff's First Amendment retaliation claim, the additional factual content provided in plaintiff's third motion to amend includes allegations that proposed defendants Correctional Officers Penrod and Frazer have retaliated against plaintiff by illegally searching his prison cell, reading, confiscating, and ripping up his grievance and legal documents, and requiring him to clean showers despite a medical restriction. (Doc. 31, ¶¶ 33-35). Although allegations that correctional employees confiscated an inmate's legal papers are sufficient to

support a First Amendment retaliation claim, *see Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (citing cases), here, plaintiff's allegations are fatally flawed.

Plaintiff alleges that Officer Penrod confiscated and/or ripped up his legal documents "unwitnessed." (Doc. 31, ¶¶ 33, 35). This allegation is purely speculative. Per plaintiff's pleading, there were no witnesses to this alleged conduct. Plaintiff alleges that during one of these searches he was in the dining hall and the amendment indicates that he intends to rely on archived videotape to prove his allegations. *Id.* at ¶ 35. The only basis plaintiff provides in support of his assumptive allegation is that Officer Penrod is or was married to Nurse Penrod, presumably a nurse at SOCF. *Id.* Such speculative allegations cannot survive a motion to dismiss as they fail to meet the pleading standards enunciated in *Iqbal* and *Twombly*. *See Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). As these allegations are no more than plaintiff's conjecture that Officer Penrod was involved in searching his cell and/or destroying his documents, the amendment should be denied.[6]

Plaintiff also alleges that Officers Penrod and Frazer improperly required him to do work despite his medical restriction. (Doc. 31, ¶ 36). Plaintiff alleges that this was retaliatory as he was not required to clean showers until SOCF received a request from this Court for information regarding his trust fund account. *Id.* A retaliation claim must set forth "a chronology of events from which retaliation may be plausibly inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citing *Cain v. Lane*, 859 F.2d 1139, 1143 n.6 (7th Cir. 1988)). Plaintiff must

---

[6] The Court also notes that plaintiff's proposed complaint alleges that Officers Penrod and Frazer engaged in the searches in retaliation for plaintiff's legal actions against them between February and August 2011. (Doc. 31, ¶ 33). However, plaintiff did not file his lawsuit until June 2011 and did not seek to add the correctional officers as defendants until August 2011. *See* Docs. 1, 18. Accordingly, plaintiff's complaint fails to make the causal connection between his protected conduct and the retaliatory conduct from the period of February 2011 to, at least, June 2011.

allege that "he engaged in protected conduct; that he suffered an adverse action; a causal connection exists between the protected conduct and the adverse action; and the alleged retaliation is capable of deterring a person of ordinary firmness from exercising his constitutional rights." *McGowan v. Cantrell*, No. 1:05-cv-334, 2007 WL 2509704, at *15 (E.D. Tenn. Aug. 30, 2007) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)).  Here, the causal connection is missing.

Plaintiff has not alleged that Officers Frazer and Penrod were aware of his lawsuit, only that the cashier's office at SOCF received a request for information regarding his funds. Moreover, it is unclear from plaintiff's allegations when he was made to clean the showers.[7] Thus, plaintiff has not alleged sufficient facts from which the Court can infer that his filing the instant lawsuit motivated Officers Frazer and Penrod to require him to clean the showers, the alleged adverse action.  Further, plaintiff does not allege that the officers were aware of his medical restriction. *Cf. Abdullah v. Spain*, No. 1:04cv1900, 2005 WL 1123564, at *1-2 (N.D. Ohio Feb. 16, 2005) (Report and Recommendation), *adopted*, 2005 WL 1123525 (N.D. Ohio May 4, 2005) (motion to dismiss plaintiff's deliberate indifference claim denied where plaintiff alleged that correctional officers had knowledge of his medical condition and nevertheless required plaintiff to perform work outside of his restriction to do only light-duty work).  Without allegations that the officers had knowledge of plaintiff's constitutionally protected conduct or his medical restriction, his proposed First Amendment retaliation claim could not withstand a motion to dismiss and, accordingly, should be denied.

---

[7] The Court also notes that plaintiff's allegation that he was under a medical restriction is questionable.  In one of the motions for discovery plaintiff filed, he included an attachment which contains interrogatories directed to defendant Clagg. (Doc. 32). Interrogatory No. 16 provides, "You were notified by plaintiff by 'Informal Complaint Resolution' in June 2011 that he needed a 'medical restriction' because of [severe pain] and was being maliciously made to scrub [showers] by [correctional officers] Penrod and Frazer . . ." *Id.*  This discovery drafted by plaintiff indicates that he was not on any medical restriction at the time he was required to clean showers, but simply that he

Lastly, plaintiff alleges that Officer Penrod placed him in isolation after receiving a copy of plaintiff's request to add him as a defendant in the instant lawsuit. (Doc. 31, ¶ 36). Specifically, plaintiff alleges:

> I, plaintiff, was placed in J2 for "disciplinary reasons" by 1st shift Correctional Officer David Penrod after he received a copy of amended complaint adding him c/o David Penrod and his partner c/o Frazer to this legal case as defendant(s), when placed in J2 or "the hole" inmate's property is left in his cell to be packed-up by an officer and taken to "Property." When plaintiff's "conduct report" was found to be frivolous and thrown out by Sgt. Little, plaintiff was returned to population and found that after "unpacking" his property – property was "missing" as well as "broken." Grievance procedure was utilized on this issue.

*Id.* These allegations do not meet the requirements of a First Amendment retaliation claim as they fail to sufficiently allege the requisite causal connection between plaintiff's constitutionally protected conduct and the adverse action.

Plaintiff's conclusory allegation that proposed defendant Officer Penrod "received a copy of [the] amended complaint adding [Officer Penrod] and his partner [Officer Frazer] to this legal case as defendant(s)" (Doc. 31, ¶ 36) is without support in the record. Plaintiff's certificates of service for his proposed amended complaints do not include Officer Penrod or Officer Frazer in the list of recipients who were served with copies of plaintiff's proposed amendments. *See* Docs. 18, 25, 31. Further, the case docket in this matter does not demonstrate that either Officer Penrod or Officer Frazer has been served with any document which would put them on notice of plaintiff's proposed amendments. It appears, much like plaintiff's speculation that Officer Penrod is or was married to SOCF Nurse Penrod, that plaintiff's allegation that Officer Penrod was served as a defendant in this matter is based solely on plaintiff's assumptions. As plaintiff has failed to allege facts which rise above his conclusory and speculative allegation that Officer Penrod or Officer Frazer were put on notice of plaintiff's intent to name them as putative

---

was requesting such a restriction *after* being given this work duty.

defendants, his First Amendment claim fails to allege the required causal connection between his

constitutional conduct and the purported adverse action. *Twombly*, 550 U.S. at 557. *See also*

*Skinner*, 89 F. App'x at 579-80.

For the reasons stated above, plaintiff's proposed amendments would not survive a Rule

12(b)(6) motion to dismiss and his motions to amend (Docs. 18, 25, 31) should be **DENIED**.

 B. Plaintiff's Motions for Injunctive Relief (Docs. 9, 17)

In his first motion for an injunction, plaintiff seeks to have the Court enjoin non-party

SOCF employees, Linnea Mahlman and Gary Croft, from placing an "Informal Complaint

Restriction" on plaintiff. (Doc. 9). Plaintiff asserts that after the SOCF received notification of

this lawsuit, he was restricted from filing further complaints. Plaintiff attached a June 16, 2011

notice that provides, "It has become apparent that over the past several weeks that you have

indeed 'abused' and 'misused' the inmate Grievance Procedure. You continuously file repetitive

complaints regarding medical." (Doc. 9, Ex. 1). The notice informs plaintiff that for 90 days he

will be restricted to receiving two informal complaint forms weekly and that this restriction will

be reviewed at the end of the suspension period. *Id.* The notice further states that plaintiff has

ongoing unrestricted access to the kite system to address emergencies, and ongoing access to

Nurse and Doctor Sick call. *Id.*

Plaintiff's second motion for a preliminary injunction seeks to have the Court require

SOCF to provide him "adequate medical tests, diagnosis, and treatments for any and all medical

issues, chronic or other, immediately[.]" (Doc. 17).

In determining whether to grant a motion for preliminary injunctive relief, this Court

must balance the following factors:

 1. Whether the movant has shown a substantial likelihood of success on the merits;

2. Whether the movant will suffer irreparable harm absent the injunction;

3. Whether the injunction will cause harm to third-parties; and

4. Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 347 (6th Cir. 1998); *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 n.3 (6th Cir. 1991).  The four factors are not prerequisites, but must be balanced as part of a decision to grant or deny injunctive relief.  *Leary,* 228 F.3d at 736; *Performance Unlimited v. Quester Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995).  A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries his burden of proving that the circumstances clearly demand it.  *Leary*, 228 F.3d at 739.  Where a prisoner seeks to enjoin prison officials, the Court must proceed with care in recognition of the reality that "courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform." *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).

This Court finds that plaintiff has not alleged facts sufficient to warrant injunctions for either of his requests.  Plaintiff's request to enjoin the non-party SOCF employees should be denied for several reasons.  First, the relief sought is not related to the instant lawsuit.  "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005).  Plaintiff has requested that this Court enjoin individuals who are not involved in this lawsuit and seeks relief that is unrelated to his allegations.  Plaintiff cannot use his standing in this lawsuit to litigate unrelated claims against non-parties.  Further, plaintiff has not established

19

that he will suffer irreparable harm without the requested injunction. Upon review of plaintiff's request, it appears that he is not suffering harm at all. Plaintiff has merely been restricted to two informal complaint forms per week but has unrestricted access to medical care and the kite system to deal with any potential emergencies. Plaintiff has failed to make any showing as to how this slight restriction has caused or will cause him any harm. Further, the 90 day period of restriction began running on June 21, 2011 and in all likelihood the restriction has been lifted, thus mooting plaintiff's request for relief. For these reasons, plaintiff's first motion for injunctive relief (Doc. 9) should be **DENIED**.

Likewise, plaintiff's second motion for preliminary injunctive relief should be denied. The relief sought by this motion is the same relief sought in plaintiff's original complaint, namely that plaintiff receive adequate healthcare. For all the reasons stated in the above discussion with respect to the adequacy of plaintiff's complaint, plaintiff has not demonstrated that he is likely to succeed on his claims. Similarly, plaintiff has failed to demonstrate that he will suffer irreparable harm should this Court deny his request compelling that he receive adequate medical care. As plaintiff himself alleges, he has received ongoing medical care for his chronic pain while an inmate at SOCF, including a consultative visit with a neurologist and trigger point injections at a pain clinic. Plaintiff simply disagrees with the adequacy of his treatment; this is not a proper basis for granting injunctive relief. *See Kennedy v. Potter,* 344 F. App'x 987 (5th Cir. 2009) (affirming denial of injunctive relief where inmate's demand for medical care amounted to disagreement over the course of his medical treatment and did not establish deliberate indifference); *White v. Goff,* No. 09–3118, 2009 WL 3182972 (10th Cir. Oct. 6, 2009) (denying prisoner's request for injunction where he received medical treatment but disagreed with the adequacy of the treatment provided); *Carney v. Treadeau,* No. 07–00083,

2008 WL 4283518, at *2 (W.D. Mich., Sept. 11, 2008) (request for injunction denied where inmate requested different medical care but did not establish likelihood of success on the merits). With respect to the third and fourth factors, while the injunction will likely not cause any harm to third-parties, it equally will not serve any public interest. Therefore, based solely on plaintiff's limited likelihood of success on the merits of his claims and the lack of evidence that plaintiff will suffer irreparable harm absent an injunction, plaintiff's second motion for injunctive relief (Doc. 17) should be **DENIED**.

      C.     Plaintiff's Motions for Discovery (Docs. 15, 32)

      Plaintiff filed a "Motion for Discovery" with the Court which contains various requests for written documents, including medical records and grievance filings, and video recordings of his cell and other areas at SOCF. (Doc. 15). Also, plaintiff filed a "Motion for Deposition Upon Written Questions," which included an attachment of interrogatory questions directed at defendant Clagg. (Doc. 32). Defendants have filed no response to either motion.

      The record does not demonstrate that plaintiff has served defendants with his discovery requests as required by Federal Rule of Civil Procedure 34. Plaintiff improperly submitted his discovery requests to the Court instead of serving them on defendants. *See generally* Fed. R. Civ. P. 26-37 (these rules govern the discovery process and provide the proper mechanisms for obtaining discovery). Plaintiff's improperly filed motions for discovery are **DENIED**.

      D.     Plaintiff's Motion for Appointment of Counsel (Doc. 16)

      Plaintiff moves the Court to appoint him an attorney on the basis of his indigency and need for an attorney to assist in the litigation of complex legal issues raised by his complaint. (Doc. 16). The law does not require the appointment of counsel for indigent plaintiffs in cases such as this, *see Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993), nor has Congress

provided funds with which to compensate lawyers who might agree to represent those plaintiffs.
The appointment of counsel in a civil proceeding is not a constitutional right and is justified only
by exceptional circumstances. *Id.* at 605-06. *See also Lanier v. Bryant*, 332 F.3d 999, 1006 (6th
Cir. 2003). Moreover, there are not enough lawyers who can absorb the costs of representing
persons on a voluntary basis to permit the Court to appoint counsel for all who file cases on their
own behalf. The Court makes every effort to appoint counsel in those cases which proceed to
trial, and in exceptional circumstances will attempt to appoint counsel at an earlier stage of the
litigation. No such circumstances appear in this case. Therefore, plaintiff's motion for
appointment of counsel (Doc. 16) is **DENIED.**

     E.     Plaintiff's Motion for Default (Doc. 29)

     Plaintiff filed his complaint on June 10, 2011. (Doc. 1). Defendant Parks was served
with a summons and copy of the complaint on August 30, 2011, and defendants Morgan and
Clagg were served with summons and a copy of the complaint on August 31, 2011. (Doc. 21).
Accordingly, defendant Parks was required to submit a responsive pleading on or before
September 20, 2011, and defendants Clagg and Morgan were required to submit their responsive
pleadings on or before September 21, 2011. *Id.* On September 21, 2011, defendants filed a joint
motion for an extension of time by which to file their responsive pleadings. (Doc. 23). This
Court granted defendants' motion for an extension and ordered that defendants were to submit
their responsive pleadings by October 6, 2011. (Doc. 24). On October 6, 2011, defendants filed
their responsive pleading in the form of a motion to dismiss plaintiff's complaint. (Doc. 27).
Plaintiff filed a motion for default against defendants which was dated October 7, 2011 and
received by this Court October 11, 2011. (Doc. 29). A review of plaintiff's motion for default
indicates that plaintiff was not aware of this Court's order granting defendants an extension of

time to file a responsive pleading.  Regardless, in light of defendants' timely filed responsive pleading, plaintiff's motion for default should be **DENIED** as moot.

### IV. Defendants' Motion to Stay Discovery (Doc. 36)

In light of this Court's recommendation that defendants' motion to dismiss plaintiff's complaint be granted, defendants' motion to stay discovery is **DENIED** as moot.

### IT IS HEREBY ORDERED:

1) Plaintiff's Motions for Discovery (Docs. 15, 32) are **DENIED**.

2) Plaintiff's Motion to Appoint Counsel (Doc. 16) is **DENIED**.

3) Defendants' Motion to Stay Discovery (Doc. 36) is **DENIED** as moot.

Further, **IT IS RECOMMENDED THAT:**

1) Plaintiff's Motions for Injunctive Relief (Docs. 9, 17) be **DENIED**.

2) Plaintiff's Motions to Amend (Docs. 18, 25, 31) be **DENIED**.

3) Plaintiff's Motion for Default (Doc. 29) be **DENIED**.

4) Defendants' Motion to Dismiss (Doc. 27) be **GRANTED** and that plaintiff's complaint be **DISMISSED** in its entirety and this matter be **CLOSED** on the docket of the Court.

Date: 1/18/2012

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL C. BARNES, JR.,                                    Case No. 1:11-cv-380
    Plaintiff,

                                             Weber, J.
   vs.                                                        Litkovitz, M.J.

DON MORGAN, *et al.*,
    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daniel C. Barnes, Jr.
499-783
SOCF
PO Box 45699
Lucasville, OH 45699

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☑ Agent  ☐ Addressee

B. Received by ( *Printed Name* )  | C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)  ☐ Yes

2. Article Number
   (*Transfer from service label*)    7003 2260 0002 6723 4422

PS Form **3811**, February 2004       Domestic Return Receipt       102595-02-M-1540